**Wayne K. PFAFF, Plaintiff–Appellant,**

v.

**WELLS ELECTRONICS, INC.,
Defendant–Appellee.**

**No. 92–1431.**

United States Court of Appeals,
Federal Circuit.

Sept. 10, 1993.

Barry L. Grossman, Banner, Birch, McKie & Beckett, of Washington, DC, argued for plaintiff-appellant. With him on the brief was Joseph M. Skerpon.

James D. Hall, Oltsch, Knoblock & Hall, P.C., South Bend, IN, argued for defendant-appellee.

---

Before PLAGER, Circuit Judge, BENNETT, Senior Circuit Judge, and SCHALL, Circuit Judge.

PLAGER, Circuit Judge.

Plaintiff Wayne K. Pfaff appeals the judgment of the United States District Court for the Northern District of Texas (district court or Texas court), No. 3–91–CV–1542–H (June 2, 1992), in a patent infringement suit. The district court granted summary judgment of noninfringement to defendant Wells Electronics, Inc. (Wells). We reverse and remand for further proceedings because the district court erred by resolving a disputed material factual issue on summary judgment.

## FACTUAL BACKGROUND

Pfaff is the inventor and owner of United States Patent No. 4,491,377 ('377 patent), which relates to a housing for mounting and testing leadless chip carriers.[1] Pfaff's housing contains three basic elements: (1) a base support, (2) conductive pins arranged vertically on the base to form a rectangular cavity the size of the leadless chip carrier, and (3) an open lid or spreader on top of the pins. For convenience, a chip enclosed in a leadless chip carrier is hereinafter referred to simply as a "chip."

To operate the device, one depresses the lid, which presses against the conductive pins, thus spreading them outward to increase the cavity's size. The chip can then be inserted through the opening in the lid into the cavity defined by the pins. When the lid is released, the conductive pins spring inward to make electrical contact with the chip. The pins not only provide electrical contact, but also hold the chip securely in place. To remove the chip, one inverts the housing and presses on the lid; this spreads the pins and allows the chip to fall out.

Claim 1 of Pfaff's patent, which is representative of the claims at issue,[2] reads:

1. Mounting means for a leadless chip carrier comprising:
(a) base support means having first and second oppositely disposed major faces;
(b) a plurality of axially elongated conductive pins passing transversely through said base support means substantially perpendicular to said first and second major faces, *the opposed inner edges of the ends of said pins* extending from said first major face *arranged to define a cavity* substantially conforming to at least two oppositely disposed lateral peripheral dimensions of said leadless chip carrier in a plane parallel with said first major face and the inner edges of said pins converging slightly inwardly with distance from said first major face; and
(c) unitary means operable independently of said leadless chip carrier reciprocally moveable axially with respect to said pins and *coacting with said opposed inner edges* of said pins for uniformly spreading the ends of said pins extending from said first major face to permit the insertion of a leadless chip carrier therebetween. [emphasis added]

In 1986 Pfaff sued Wells in the United States District Court for the Northern District of Indiana (Indiana court), alleging that two of Wells' devices infringed claims 1 and 6–10 of the '377 patent. Wells counterclaimed that Pfaff's patent was invalid. The Indiana court held that Pfaff's patent was not invalid and that Wells' devices did not infringe claim 1 of Pfaff's patent because their pins were not "axially elongated" and did not have opposed inwardly converging inner edges. Instead, the pins "are shortened and are rolled outwardly by a return bent portion." Furthermore,

[t]he unitary spreader means of the Wells device does not coact with those inner

---

1. A leadless chip carrier is a protective enclosure for chips. An integrated circuit chip is packaged within a ceramic or plastic carrier which incorporates electrical leads for connecting the chip to other circuitry. More recently, the industry has replaced the conventional leads with terminal lands, or contact pads, around the periphery of the carrier. When a leadless chip carrier is mounted for testing or for connection with a circuit board, the terminal lands on the carrier must be aligned with corresponding contacts in the housing into which the carrier is placed.

2. Pfaff states that claim 1 "may be considered as representative of all the claims for the purposes of this appeal." Appellant's Br. at 16.

516

edges of the conductive pins that define the cavity. The unitary spreader means of the Wells device coacts with an arm extended from the pins. Even if the court views the arms ... as inner edges of the conductive pins, those "inner edges" formed by the arms are not the same "inner edges" that define the cavity.

*Pfaff v. Wells Electronics, Inc.,* 9 USPQ2d 1366, 1369–70 1988 WL 156744 (N.D.Ind. 1988), *aff'd,* 884 F.2d 1399 12 USPQ2d 1158 (Fed.Cir.1989) (nonprecedential).

The Indiana court also held that prosecution history estoppel prevented Pfaff from claiming infringement under the doctrine of equivalents. The Patent and Trademark Office (PTO) Examiner had rejected original claim 1, as filed, on the grounds it was anticipated by (1) William Pauza et al., U.S. Patent No. 3,753,211, which discloses a direct force insertion device in which the lid presses against the outer edges of the pins to force them inwardly into contact with a chip, and by (2) Anhalt, U.S. Patent No. 4,159,861, which discloses a device in which pins rise from the base with an inward incline and then bend outward in a semi-circular fashion to end in a downwardly extending arm, and in which a camming device presses upwardly against the semi-circular portion of the arms to retract the pins outwardly. To distinguish these references, Pfaff amended Claim 1 to recite "axially elongated" to describe the pins and the phrase "coacting with said opposed inner edges of said pins" in reference to the spreader.

In affirming that decision, this court said that "the claim requires the coaction of the spreader means with the pin ends' inner edges which define the cavity." *Pfaff v. Wells Electronics, Inc.,* 12 USPQ2d 1158, 1159, 884 F.2d 1399 (Fed.Cir.1989) (nonprecedential). We agreed with the Indiana court that Wells' devices were noninfringing because their pins were not axially elongated and did not incline in a plane substantially parallel to the first major face, and because their spreaders coacted with a portion of the pin ends that did not define the cavity. We also agreed with the Indiana court that prosecution history estoppel prevented Pfaff from construing Wells' pins and spreader as equiv-

alents; "Pfaff amended his claims [to overcome prior art by] adding 'axially elongated' to limit his pins and 'inner edges' to limit the structure defining the cavity." *Id.* at 3.

On August 1, 1991 Pfaff commenced this suit in Texas, alleging that six of Wells' subsequently-developed devices infringed claims 1, 6–7, 10–11 and 19 of his patent. On April 15, 1992 Wells moved for summary judgment. On May 1, 1992 Pfaff filed a brief in opposition; on May 11, 1992 Wells replied. On June 2, 1992 the Texas court granted summary judgment to Wells. With regard to literal infringement, the court said:

Defendant's six devices depart from at least one *essential* element of Plaintiff's Patent claims. Specifically, the unitary spreader means of Defendant's six devices do *not* coact with the inner edges of the conductive pins that define the cavity.... Defendant's unitary spreaders coact with portions of the pins which are *laterally removed* from the inner edges of the pins which define the cavity. In no instance do the unitary spreaders come in contact with the cavity.

Defendant also argues that two other essential elements of the Plaintiff's claims are not satisfied by the accused device: the pins in the accused device are not axially elongated, and they do not inwardly incline [in] any plane substantially parallel to the first major face of the socket housing. The Court, however, need not address Defendant's additional arguments because as stated above, the fact that a single element essential to the Patent Claims 1 and 7 is not present in the accused device defeats Plaintiff's assertions of infringement.

*Pfaff v. Wells Electronics, Inc.,* No. 3–91–CV–1542–H, slip op. at 6–7 (N.D.Tex. June 2, 1992) (emphasis in original).

The court also found no infringement under the doctrine of equivalents:

It is beyond question, and the Indiana Court has so found, that one of the specific elements amended by Plaintiff to overcome the deficiencies of his application Claims 1 and 7 was that the spreader means operated on and coacted with the *inner* edges of the pin, as contrasted to the outer edges.

Furthermore, the *inner* edges of the pins was defined as those edges "mating with" or "defining the cavity". Plaintiff now can not contend that Defendant's devices with the spreader means coacting with the outer edges of the pins which do not mate with or define the cavity are equivalents. The doctrine of prosecution [history] estoppel defeats Plaintiff's reliance on the doctrine of equivalents.

*Id.* at 9 (emphasis in original, citations omitted).

On June 12, 1992 Pfaff filed a motion for reconsideration and submitted deposition excerpts and an expert affidavit testifying that the Wells spreaders coact with "inner edges" of the conductive pins. On June 17, 1992, the district court denied reconsideration.

## DISCUSSION

Summary judgment is proper only if there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All evidence must be viewed in the light most favorable to the non-moving party, and all reasonable inferences should be drawn in favor of the non-moving party. *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1522, 25 USPQ2d 1196, 1197–98 (Fed.Cir. 1992). In reviewing the trial court's decision, we are required to independently determine whether the standards for summary judgment have been met. *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 673, 15 USPQ2d 1540, 1543 (Fed. Cir.1990).

### A. Collateral Estoppel/Issue Preclusion

In its ruling, the Texas court relied on the Indiana court's claim interpretation as "res judicata:"

Despite the disparity in the devices and two of the Claims at issue, the Indiana Court's findings in relation to the prosecution history of the Patent, and the elements essential to certain Claims in the Patent are res judicata ...

*Id.* at 2.

Wells contends that, by disputing the interpretation of the term "inner edges" and the prosecution history estoppel analysis, Pfaff is repeating arguments that were rejected previously in the Indiana case. According to Wells, Pfaff may not do this because the claim interpretation and prosecution history estoppel rulings in the Indiana case represent law of the case or res judicata. Wells alleges that the six devices at issue here are similar to the prior two devices at issue in the Indiana case, because they lack spreaders which contact inner edges defining the cavity, and thus do not infringe the '377 patent.

Pfaff argues that the prior Indiana litigation does not preclude an assertion of infringement here, because the six devices at issue now are significantly different from the two devices adjudged noninfringing in the Indiana case. The six devices contain a feature lacking in the prior two devices—a spreader coacting with inner edges that define the cavity. Thus, says Pfaff, the six devices infringe under the claim interpretation used by the Indiana court.

 In describing the issue as "res judicata" or "law of the case," the district court and Wells have misused these terms. Res judicata, or *claim* preclusion, deals with the effect of a prior judgment on the identical claim or cause of action between the same parties. Collateral estoppel, or *issue* preclusion, deals with the relitigation of issues previously decided, when such issues arise in a subsequent litigation on a claim not barred by res judicata. 1B James W. Moore et al., Moore's Federal Practice ¶ 0.401 (2d ed. 1992).

We have said previously that "judicial statements regarding the scope of patent claims are hypothetical insofar as they purport to resolve the question of whether prior art or products not before the court would, respectively, anticipate or infringe the patent claims." *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 704, 218 USPQ 965, 968 (Fed. Cir.1983). "A device not previously before the court, and shown to differ from those structures previously litigated, requires determination on its own facts." *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1324, 5 USPQ2d 1255, 1258

(Fed.Cir.1987). *Young Engineers, Inc. v. United States Int'l Trade Comm'n,* 721 F.2d 1305, 1316, 219 USPQ 1142, 1152 (Fed.Cir. 1983) ("With respect to patent litigation, we are unpersuaded that an 'infringement claim,' for purposes of claim preclusion, embraces more than the specific devices before the court in the first suit."). However, "where a determination of the scope of patent claims was made in a prior case, and the determination was essential to the judgment there on the issue of infringement, there is collateral estoppel in a later case on the scope of such claims." *Molinaro v. Fannon/Courier Corp.,* 745 F.2d 651, 655, 223 USPQ 706, 708 (Fed. Cir.1984).

■ Here, the district court and both parties agree that the claim interpretation of the Indiana case—that "the claim requires the coaction of the spreader means with the pin ends' inner edges which define the cavity"— controls in this case. They are correct. The prior claim interpretation has issue preclusive effect in the present case insofar as it was necessary to the judgment of noninfringement in the previous case. The dispute is whether the six devices charged with infringement here contain a spreader which coacts with inner edges defining the cavity. The answer to this question, and whether the question is a material factual dispute, is addressed in the next section.

### B. Summary Judgment
#### 1.

The sole ground for summary judgment, and thus the only issue on appeal, was that the spreader of each device does not press against an inner edge of the pins that defines the cavity. Pfaff argues that summary judgment was improper because (1) the district court erroneously defined the phrase "inner edge" in the claims to mean the physically innermost edge which contacts the chip, and (2) the court resolved a disputed material factual issue by finding that the spreaders of the Wells devices coact with the outer edge, not the inner edge, of the pins.

Pfaff contends that because the "inner edges" of the pins are defined by the cavity, "inner edge" should be interpreted to mean any inwardly facing surface of the pin which borders the cavity. According to Pfaff, the cavity is not limited to the immediate area where the chip nests, but extends vertically along the entire length of the pins between the base support and the lid. The cavity is determined in part by the contact point where the spreader engages the pins. Pfaff asserts that the specification supports his interpretation; in Figs. 4–5 of the '377 patent, inclined edge 50 is an "inner edge" even though it does not contact the chip and in fact is laterally removed from the point 51a which does contact the chip. Thus, says Pfaff, an "inner edge" can include a point which never contacts the chip, as long as this point borders the cavity.

Wells asserts that the Indiana court and this court defined "cavity" as the immediate area in which the chip nests, and argues that Pfaff erroneously stretches the definition of "cavity" to include the entire area between the lid and the base. Wells states that its interpretation is supported by the requirement in claim 1 that the cavity substantially conform to at least two opposite lateral dimensions of the chip. Thus, says Wells, the "cavity" is the size of the chip and no larger.

Pfaff replies that prior litigation did not restrict the interpretation of "cavity" to the immediate nesting locale of the chip. In the Indiana case, the two accused devices each contained a spreader which contacted an arm extending laterally from the pin; these arms were clearly exterior to the central cavity. Pfaff also points out that the limitation in claim 1 that the cavity "substantially conform" to the size of the chip does not restrict the cavity to the exact area of the chip, and certainly says nothing about the vertical dimensions of the cavity.

We agree with Pfaff; nowhere did the Indiana court or this court construe "cavity" as the immediate nesting locale of the chip. In effect, Wells attempts to rewrite the prior claim interpretation—"inner edges which define the cavity"—to state "inner edges which contact the immediate nesting locale of the chip." Not only is Wells' proposed interpretation novel, but it also is inconsistent with the definition of "cavity" in the specification as the "central cavity defined by the blades

20b." *See SRI Int'l v. Matsushita Electric Corp. of Am.*, 775 F.2d 1107, 1117 n. 11, 1118, 227 USPQ 577, 582 n. 11, 583 (Fed.Cir.1985) (in banc) (claims are construed in light of the specification). In Figs. 2–3 and 4–5, we see that the area between blades 20b includes much more than the immediate area where the chip nests. The inner surface of each blade 20b extends vertically from the base to the spreader and includes a portion of the surface which appears laterally removed from the point which contacts the chip.

As we said above, neither party disputes that the proper claim interpretation requires a spreader which coacts with inner edges of the pins that define the cavity. The dispute is whether the accused devices meet this claim limitation, i.e. whether the accused spreaders coact with a point on the pins which is an 'inner edge' that defines the cavity or an 'outer edge' that does not define the cavity. The district court made a factual finding that the accused spreaders coact with a point that is not an inner edge defining the cavity.

We do not think that the district court could make such a factual finding based on the rough drawings, which were the only evidence before the district court pertaining to the six devices.[3] In any case, by making such a factual finding the court improperly resolved a disputed material factual issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"); *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260, 225 USPQ 697, 701 (Fed.Cir.1985) (fact-finding is an inappropriate exercise on summary judgment; "[i]f a dispute requiring a finding exists as to any material fact, summary judgment is improper.")

We note that, although Wells contended before the trial court that its devices differ

from Pfaff's claims in other ways, those issues are not before us because the court explicitly refused to address Wells' other defenses. *See Cicena Ltd. v. Columbia Telecommunications Group*, 900 F.2d 1546, 1552, 14 USPQ2d 1401, 1407 (Fed.Cir.1990) (issues not decided by trial court are not before us on appeal); *Beloit Corp. v. Valmet OY*, 742 F.2d 1421, 1423–24, 223 USPQ 193, 195 (Fed. Cir.1984) (same). The sole basis for summary judgment was the district court's determination that the accused spreaders do not coact with the inner edges defining the cavity.

2.

Pfaff also argues that prosecution history estoppel does not preclude him from relying on the doctrine of equivalents; specifically, nothing in the prosecution history prevents Pfaff from asserting that "inner edge" is any surface of the pin that faces the cavity between the base and the spreader. Pfaff asserts that his amendments of claim 1 to distinguish Pauza and Anhalt were not meant to distinguish devices such as Wells', which are very different from the devices disclosed in Pauza and Anhalt. Wells responds with the argument that the prosecution history estoppel issue was decided previously and is "law of the case."

In light of our discussion above, which vacates the summary judgment of noninfringement on the grounds of literal infringement, we need not address this issue in depth. Wells is correct that, in affirming the Indiana court, we agreed that the phrase "coacting with said opposed inner edges of said pins" was a limitation added to claim 1 to distinguish prior art. In that case, we stated that Wells' spreaders, which coacted with arms extending laterally from the pins, could not be construed as equivalents because they contacted 'outer edges' of the pins. However, in this case there remains a material factual dispute as to whether the accused spreaders coact with an 'inner edge' that defines the cavity or an 'outer edge' that

---

**3.** Defendant's exhibits D–1 and D–2 show devices in which the spreader appears to contact inner edges that define the cavity. Exhibits D–3 through D–6 are ambiguous on this point, but the evidence must be viewed in the light most favorable to Pfaff, the non-moving party, and reasonable inferences should be drawn in his favor. *See C.R. Bard*, 911 F.2d at 672, 15 USPQ2d at 1542.

does not. The existence of this question, which renders summary judgment on the literal infringement issue improper, likewise renders summary judgment improper on whether the accused spreaders infringe under the doctrine of equivalents.

### C. Other Matters

Wells also asserts that Pfaff's appeal was frivolous because it attempted to relitigate issues already adjudicated, and Wells seeks damages and costs under Fed.R.App.P. 38. In view of our decision above, we do not find Pfaff's appeal to be frivolous.

### CONCLUSION

We reverse the district court's summary judgment because it improperly resolved a genuine issue of material fact, and we remand for further proceedings.

### Costs

Each party is to bear its own costs.

**REVERSED AND REMANDED.**