MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT
 

 GADOLA, District Judge.
 

 Among the many motions before this Court is Defendant Symantec Corporation’s Motion for Summary Judgment of Non-Infringement filed September 14, 1999. For reasons stated below, this Court grants Defendant’s motion, dismisses this civil action, and denies all other pending motions without prejudice as moot.
 

 In support its Motion for Summary Judgment of Non-Infringement, Defendant submitted an opinion by Judge Nancy G. Edmunds in
 
 Hilgraeve Corp. v. McAfee Associates, Inc.,
 
 70 F.Supp.2d 738 (E.D.Mich.1999), issued on June 10, 1999. Judge Edmunds’ opinion concerns the same patent, same patent claims, and same Plaintiff patentee alleging infringement by a party whose accused product is very similar to Defendant’s in the instant case. The Complaints in her case and the instant case were filed on the same day, September 15, 1997. Plaintiff did not identify any companion case on the Civil Cover Sheets accompanying the Complaints, which helps explain why the relatedness of the cases was not discovered sooner. The two cases are, in effect, companion cases.
 
 See
 
 E.D.Mich. LR 83.11(b)(7)(A). The Memorandum Opinion and Order in
 
 McAfee Associates
 
 is on appeal to the United States Court of Appeals for the Federal Circuit; it also has some collateral estoppel effect on the instant ease and, to the extent that it does not, this Court grants Defendant’s Motion for Summary Judgment of Non-Infringement for the reasons similar to those stated in Judge Edmunds’ opinion.
 

 Factual and Procedural Background
 

 Plaintiff is Hilgraeve Corporation, a Michigan corporation that owns U.S.Patent No. 5,319,776 (the “ ’776 Patent”), the patent at issue in this civil action. The ’776 Patent, entitled “In Transit Detection of Computer Virus With Safeguard,” issued on June 7, 1994 to inventors John K. Hile, Matthew H. Gray, and Donald L. Wakelin and was thereafter assigned to Plaintiff. Defendant is Syman-tec Corporation, a Delaware corporation with its principal place of business in California.
 

 On September 15, 1997, Plaintiff filed the instant action, alleging in a single Count that Defendants products infringe the ’776 Patent pursuant to Title 28, United States Code, Section 271. In the course of litigation, Plaintiff has alleged that nine of Defendant’s products infringe the ’776 Patent: (1) pcANYWHERE, (2) Norton AntiVirus for Windows 95/98, (3) Norton AntiVirus for Windows NT, (4) Norton AntiVirus for Windows 3.X, (5) Norton AntiVirus for DOS, (6) Norton An-tiVirus for Lotus Notes, (7) Norton AntiVi-rus for Netware, (8) Norton AntiVirus for E-Mail Gateways, and (9) Norton AntiVi-rus for Firewalls.
 

 
 *853
 
 Defendant filed a counter-claim on December 30, 1997, alleging that the ’776 Patent is invalid (Count I) and that Defendant did not infringe the ’776 Patent (Count II). Non-expert discovery closed on May 7, 1999, and expert discovery closed on August 6, 1999. Defendant now moves for summary judgment on Count II of its counter-claim.
 

 Discussion
 

 1. Standard for summary judgment
 

 Rule 56 of the Federal Rules
 
 of
 
 Civil Procedure provides that summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed. R. Civ.P. 56(c). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party’s case on which the nonmoving party would bear the burden of proof at trial.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986);
 
 Martin v. Ohio Turnpike Commission,
 
 968 F.2d 606, 608 (6th Cir.1992).
 

 In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party.
 
 60 Ivy Street Corp. v. Alexander,
 
 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact.
 
 Id.
 
 at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists.
 
 Id.
 
 at 1435.
 

 A fact is “material” for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties.
 
 Kendall v. Hoover Co.,
 
 751 F.2d 171, 174 (6th Gir.1984). A dispute over a material fact is genuine “if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.”
 
 Anderson v. Liberty Lobby, Inc., 477
 
 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate.
 
 Id.; Feliciano v. City of Cleveland,
 
 988 F.2d 649, 654 (6th Cir.1993).
 

 Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact is in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmov-ing party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated:
 

 [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [nonmov-ing party’s] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.
 

 Anderson, 477
 
 U.S. at 249-50, 106 S.Ct. 2505 (citations omitted);
 
 see Celotex, 477
 
 U.S. at 322-23, 106 S.Ct. 2548;
 
 Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,
 
 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury.
 
 Lucas v. Leaseway Multi Transportation Service, Inc.,
 
 738 F.Supp. 214, 217 (E.D.Mich.1990),
 
 aff'd,
 
 929 F.2d 701 (6th Cir.1991). “The mere existence of a scintilla of evidence in support of the plaintiffs position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.”
 
 Anderson, 477
 
 U.S. at 252, 106 S.Ct. 2505;
 
 *854
 

 see Cox v. Kentucky Department of Transportation, 53
 
 F.3d 146, 150 (6th Cir.1995).
 

 2. Collateral estoppel
 

 In general, the doctrine of collateral estoppel provides that when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again in any future lawsuit involving the same parties. In some cases, a party that was not before the court for a prior judgment may benefit from that judgment in a future proceeding. According to the United States Court of Appeals for the Federal Circuit,
 

 A second defendant is entitled to the benefit of a judgment issued against the plaintiff in favor of a first defendant in prior litigation on the same issues.... [Wjhere a determination of the scope of patent claims was made in a prior case, and the determination was essential to the judgment there on the issue of infringement, there is collateral estoppel in a later case on the scope of such claims, i.e., the determined scope cannot be changed.
 

 Molinaro v. Fannon/Courier Corp.,
 
 745 F.2d 651, 655 (Fed.Cir.1984) (citing
 
 A.B. Dick Co. v. Burroughs Corp.,
 
 713 F.2d 700 (Fed.Cir.1983));
 
 see Pfaff v. Wells Electronics, Inc., 5
 
 F.3d 514, 518 (Fed.Cir. 1993) (“The prior claim interpretation has issue preclusive effect in the present case insofar as it was necessary to the judgment of non-infringement in the,previous case.”).
 

 The defendant’s motion for summary judgment in
 
 A.B. Dick Co. v. Burroughs Corp.,
 
 713 F.2d 700 (Fed.Cir.1983), was grounded on the collateral estoppel effect of another court’s holding that another defendant did not infringe the same patent. The Federal Circuit held that, “judicial statements regarding the scope of patent claims are entitled to collateral es-toppel effect in a subsequent infringement suit only to the extent that determination of scope was essential to a final judgment on the question of validity or infringement; further, that such statements should be narrowly construed.”
 
 A.B. Dick,
 
 713 F.2d at 704.
 

 Some issues in the instant case are identical to those adjudicated by Judge Edmunds in
 
 McAfee Associates,
 
 such as the proper construction of claims 1, and 18 of the ’776 Patent and the application of prosecution history estoppel to the doctrine of equivalents analysis. These issues can be resolved regardless of who the defendant may be since they concern the intrinsic evidence surrounding the patent. Here, as in
 
 Molinaro
 
 and
 
 A.B. Dick,
 
 the identical issues were decided previously, those issues were fully litigated in a previous case, the resolution of those issues was essential to a final judgment there, and the patent owner had a full and fair opportunity to litigate those issues. Therefore, the proper construction of claims 1 and 18 of the ’776 Patent and application of prosecution history estoppel to the doctrine of equivalents analysis in
 
 McAfee Associates
 
 has preclusive effect here.
 

 3. Analysis
 

 Determining patent infringement is a two-step process of (1) claim construction, and (2) claim comparison.
 
 Hilgraeve Corp. v. McAfee Associates, Inc.,
 
 70 F.Supp.2d 738, 742 (E.D.Mich.1999). In the first step, the Court must construe the meaning and scope of the disputed claim language. This step is considered a question of law,
 
 see, e.g., Markman v. Westview Instruments, Inc.,
 
 52 F.3d 967, 981 (Fed. Cir.1995), and, therefore, is well suited for summary judgment.
 
 McAfee Associates,
 
 70 F.Supp.2d at 742. In the second step, the Court must compare the properly construed claims with the accused product to determine whether the patent has been infringed either literally or under the doctrine of equivalents.
 
 Wolverine World Wide, Inc. v. Nike, Inc.,
 
 38 F.3d 1192, 1200 (Fed.Cir.1994);
 
 McAfee Associates,
 
 70 F.Supp.2d at 742.
 

 
 *855
 
 a. Claim construction
 

 Since the proper construction of claims 1 and 18 of the ’776 Patent is the identical issue previously adjudicated in
 
 McAfee Associates,
 
 and because this issue can be determined regardless of the particular defendant before the Court, the claim construction provided by Judge Edmunds has collateral estoppel effect to the extent that the determination of the scope of the ’776 Patent claims was essential to a final judgment on the question of non-infringement.
 
 See Pfaff v. Wells Electronics, Inc.,
 
 5 F.3d 514, 518 (Fed.Cir.1993);
 
 Molinaro v. Fannon/Courier Corp.,
 
 745 F.2d 651, 655 (Fed. Cir.1984);
 
 A.B. Dick Co. v. Burroughs Corp.,
 
 713 F.2d 700 (Fed.Cir.1983). Therefore, this Court adopts Judge Edmunds’ opinion on claim construction and only will summarize the relevant analysis below.
 

 In the claim construction step, the Court must consider three kinds of intrinsic evidence: (1) the patent claims, (2) the patent specification, and (3) the prosecution history, if it is in evidence.
 
 See e.g., Vitronics Corp. v. Conceptronic, Inc.,
 
 90 F.3d 1576, 1582 (Fed.Cir.1996);
 
 Markman,
 
 52 F.3d at 979;
 
 McAfee Associates,
 
 70 F.Supp.2d at 742. First, in construing the language of the patent claims, the Court must give the words their “ordinary and customary meanings” unless the patentee has given the terms special definitions as “clearly stated in the patent specification or file history.”
 
 Vitronics Corp.,
 
 90 F.3d at 1582;
 
 see McAfee Associates,
 
 70 F.Supp.2d at 742. Second, the patent specification is the written description of the invention and “may act as a sort of dictionary, which explains the invention and may define terms used in the claims.”
 
 Markman,
 
 52 F.3d at 979;
 
 see Vitronics Corp.,
 
 90 F.3d at 1582;
 
 McAfee Associates,
 
 70 F.Supp.2d at 742. A claim construction should include the preferred embodiment set forth in the patent specification,
 
 see Hoechst Celanese Corp. v. BP Chemicals Ltd.,
 
 78 F.3d 1575, 1581 (Fed.Cir.1996), although the preferred embodiment does not necessarily limit the scope of a claim,
 
 see Transmatic, Inc. v. Guiton, Industries, Inc.,
 
 53 F.3d 1270, 1277 (Fed.Cir.1995).
 
 See McAfee Associates,
 
 70 F.Supp.2d at 742. Third, the prosecution history, if in evidence, “limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution,”
 
 Southwall Technologies, Inc. v. Cardinal IG Co.,
 
 54 F.3d 1570, 1576 (Fed.Cir. 1995), but it may not “enlarge, diminish, or vary the limitations in the claim.”
 
 Markman,
 
 52 F.3d at 980 (quotation omitted);
 
 see McAfee Associates,
 
 70 F.Supp.2d at 743.
 

 If the meaning and scope of a claim is clear after considering the language of the patent claims, the patent specification, and the prosecution history, then the Court should not consider any extrinsic evidence.
 
 See Vitronics Corp.,
 
 90 F.3d at 1583;
 
 McAfee Associates,
 
 70 F.Supp.2d at 743. If, however, the meaning and scope of a claim remains unclear, then the Court may consider extrinsic evidence “including expert and inventor testimony, dictionaries, and learned treatises.”
 
 Markman,
 
 52 F.3d at 980;
 
 McAfee Associates,
 
 70 F.Supp.2d at 742.
 

 In the instant case, Plaintiff accuses Defendant of infringing claims 1, 2, 6, 12, 14, 16, and 18 of the ’776 Patent. Claims 1 and 18 are independent claims, whereas claims 2, 6, 12, 14, and 16 are dependent upon claim 1. A finding that Defendant’s accused products do not infringe the independent claims will dispose of Plaintiffs case.
 
 See Desper Products, Inc. v. QSound Labs, Inc.,
 
 157 F.3d 1325, 1338 n. 5 (Fed.Cir.1998);
 
 London v. Carson Pirie Scott & Co.,
 
 946 F.2d 1534, 1539 (Fed.Cir. 1991);
 
 McAfee Associates,
 
 70 F.Supp.2d at 744. Therefore, the Court need concern itself only with claims 1 and 18.
 

 Claim 1 reads as follows:
 

 1. In a system for transferring digital data for storage in a computer storage medium, a method of screening the data
 
 as it is being iransfen'ed
 
 and auto-
 
 *856
 
 maticaUy inhibiting the storage of screened data containing at least one predefined sequence, comprising the steps of:
 

 causing a quantity of digital data resident on a source storage medium to be transferred to a computer system having a destination storage medium;
 

 receiving and screening the transferred digital data
 
 prior to storage
 
 on the destination storage medium to determine if at least one of a plurality of predefined sequences are present in the digital data received; and
 

 in response to said screening step:
 

 (a) automaticaUy causing the screened digital data to be stored on said destination storage medium if none of the plurality of predefined sequences are present and
 

 (b) automaticaUy inhibiting the screened digital data from being stored on said destination storage medium if at least one predefined sequence is present.
 

 (’776 Patent, column 17, lines 9-29 (emphasis added).)
 

 Claim 18 reads as follows:
 

 18. A method of preventing the spread of computer viruses to a computer having a storage medium, comprising the steps of:
 

 simultaneously searching
 
 for a plurality of virus signatures, each of which comprising an identifiable digital sequence,
 
 while said computer is receiving a stream of digital data for storage
 
 on said storage medium;
 

 providing an indication of the detection of a virus from said searching step; and
 

 automaticaUy inhibiting the storage of said digital stream on said storage medium if any of said virus signatures have been detected.
 

 (’776 Patent, column 18, lines 45-57 (emphasis added).)
 

 As Judge Edmunds explained, “[c]laims 1 and 18 teach that virus screening or searching is done while incoming digital data is being received or transferred and before it is stored on the destination storage medium.”
 
 McAfee Associates,
 
 70 F.Supp.2d at 746. Claim 1 discloses that incoming digital data is first screened for viruses while the digital data is being received and “prior to storage on the destination storage medium,” and then, “in response to said screening step,” the “screened digital data” is either automati-caUy “stored on the destination storage medium” if a virus is not detected or automatically inhibited from “being stored on said destination storage medium” if one is detected during the screening step. Claim 18 discloses simultaneous searches for “a plurality of virus signatures ... whüe said computer is receiving a stream of digital data for storage,” and then, if a virus is detected “from said searching step,” the ’776 Patent invention “automaticaUy inhibit[s] the storage of said digital stream on said storage medium.”
 

 Judge Edmunds concluded that the term “storage” used in claims 1 and 18 required some clarification. Plaintiff had urged the
 
 McAfee Associates
 
 Court to recognize that “storage occurs ‘when the incoming file or data is sufficiently present on the destination disk medium so any viruses can spread and infect the system.’ ”
 
 McAfee Associates,
 
 70 F.Supp.2d at 745 n. 7. The defendant in that case had asserted that “storage occurs ‘when the digital data is written to, and present on, the destination medium, and accessible by the operating system or other programs, so any viruses contained in the data can spread elsewhere in the computer system.’ ”
 
 Id.
 
 Judge Ed-munds noted that “[t]he parties essentiaUy agree on the meaning of storage,”
 
 id.
 
 at 745, and concluded that, “storage occurs when the incoming digital data is sufficiently present on the destination storage medium, and accessible by the operating system or other programs, so that any viruses contained in the data can spread and infect the computer system.”
 
 Id.
 

 
 *857
 
 Defendant here, in effect, urges this Court to delete from this definition the requirement that data must be “accessible by the operating system or other programs” in order to be considered stored.
 
 (See
 
 Def.Br. at 14-15.) Defendant argues that “[b]ecause claim interpretation is a question of law, ... a claim should not be interpreted based on an agreement by the parties in a related, but different, case.”
 
 (Id.
 
 at 15.) While the “related, but different, case” to which Defendant refers has preclusive effect on this Court’s claim interpretation, as explained above, this Court agrees that proper claim interpretation may not be based solely on the agreement of the parties.
 

 As explained above, when construing patent claims, this Court is required to consider only the intrinsic evidence of the patent claims, the patent specification, and the prosecution history, unless the meaning and scope of those claims are unclear. Furthermore, while the Court is not required to adopt the meaning proffered by one or more of the parties,
 
 see Exxon Chemical Patents, Inc. v. Lubrizol Corp.,
 
 64 F.3d 1553, 1555 (Fed.Cir.1995), a party should not be permitted to argue for a different definition than the one it successfully urged the court below to adopt. Therefore, in light of there being no apparent requirement in claims 1 or 18, the patent specification, or the prosecution history that the stored data be “accessible by the operating system or other programs,” and Plaintiff having argued below that “storage” occurs “when the incoming file or data is sufficiently present on the destination disk medium so any viruses can spread and infect the system,” this Court will construe “storage” here as follows: storage occurs when the incoming digital data is sufficiently present on the destination storage medium so that any viruses contained in the data can spread and infect the computer system. By omitting from the definition a restriction that does not have a basis the patent claims, patent specification, or prosecution history, this definition is closer to the ordinary and customary meaning of the term in this context and still appears to be consistent with the definitions offered by the parties’ experts.
 

 According to the patent specification, the invention receives part of the incoming digital data in a buffer during the data transfer.
 
 McAfee Associates,
 
 70 F.Supp.2d at 748. The invention scans the data in the buffer for the presence of a predefined digital sequence, such as a virus signature, before storing the data on the destination medium.
 
 Id.
 
 If a predefined sequence is found in the digital data, the data in the buffer is inhibited from being stored on the destination storage medium.
 
 Id.
 
 If a predefined sequence is not found in the digital data, the data is then transferred from the buffer to a file on the destination storage medium where it is then stored.
 
 Id.
 
 If a predefined sequence is subsequently detected in an incoming block of digital data, the previously stored, virus-free block of digital data can be purged or overwritten as an added anti-virus safety.
 
 Id.
 

 In the preferred embodiment, the “string search routine” disclosed in the ’776 Patent tests each character within a block of data as it enters the buffer by searching for a match to a virus signature. (’776 Patent, column 5, lines 2-21.)
 
 See McAfee Associates,
 
 70 F.Supp.2d at 747. A block of data is transmitted, screened for viruses, and stored in a file if it is virus-free, and then the next block of data is transferred, and the process is repeated. (’776 Patent column 6, lines 22-68; column 7, lines 1-14.)
 
 See McAfee Associates,
 
 70 F.Supp.2d at 747. If, in response to the screening step, a virus is detected in a block of data being transmitted, the transfer is canceled prematurely,
 
 (id.
 
 column 6, lines 14-16), and the data in the file can be purged or deleted by overwriting,
 
 (id.
 
 column 6, lines 24-31).
 
 See McAfee Associates,
 
 70 F.Supp.2d at 747.
 

 Finally, the prosecution history shows that “prior to storage on the destination
 
 *858
 
 storage medium” was added to distinguish the ’776 Patent invention from the prior art.
 
 See McAfee Associates,
 
 70 F.Supp.2d at 748.
 

 b. Claim comparison
 

 i. Literal infringement
 

 To establish that Defendant’s accused product literally infringe Plaintiffs ’776 Patent, every limitation of claims 1 and 18 must be found in Defendant’s accused products.
 
 See London v. Carson Pirie Scott & Co.,
 
 946 F.2d 1534, 1539 (Fed.Cir.1991) (“There can be no infringement as a matter of law if a claim limitation is totally missing from the accused device.”). “[A] literal infringement issue is properly.decided upon summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.”
 
 Bai v. L & L Wings, Inc.,
 
 160 F.3d 1350, 1353 (Fed.Cir.1998);
 
 see McAfee Associates,
 
 70 F.Supp.2d at 751.
 

 In order to determine whether the accused products literally infringe the ’776 Patent, the Court must compare the claim constructions above with Defendant’s accused products.
 
 McAfee Associates,
 
 70 F.Supp.2d at 751. As in
 
 McAfee Associates,
 
 Plaintiff asserts that Defendant’s accused products infringe claims 1 and 18 because they screen incoming digital data for viruses during transfer and before storage on the destination storage medium.
 
 Id.
 
 Defendant asserts the accused products screen for viruses only after all the incoming digital data has been transferred and stored on the destination storage medium. According to Defendant, none of its accused products “screen[ ] the data as it is being transferred,” “sereen[ ] the transferred digital data prior to storage on the destination storage medium,” or “in response to said screening steps ... automatically caus[e] the screened digital data to be stored on said destination storage medium” as required by claim 1, nor do they “search[ ] for a plurality of virus signatures ... while said computer is receiving a stream of digital data for storage on said storage medium” as required by claim 18. This Court agrees.
 

 Each of Defendant’s accused products generally operates as follows: First, a file is transferred for storage on the destination storage medium. (Melvin Decl. f 6.) This transfer includes opening a new file on the destination storage medium, transferring data to that medium, and recording the data into the new file.
 
 (Id.)
 
 Second, the application causing the transfer makes a request to the operating system to close the file containing the transferred data.
 
 (Id.)
 
 Third, the operating system closes the file.
 
 (Id.)
 
 After the operating system closes a file, the file is recorded on the storage medium and the file is accessible to the operating system and to other application programs.
 
 (Id.
 
 ¶ 9.) Fourth, after the file is closed, the accused products invoke the Norton AntiVirus Scan Engine in order to test the file for the presence of a computer virus.
 
 (Id.
 
 ¶ 6.) The transferred file is accessible to other programs prior to being examined by the accused products because the Norton AntiVirus Scan Engine is not invoked and does not access the transferred file until after the operating system closes the file.
 
 (Id.
 
 ¶ 9.) To invoke the Norton AntiVirus Scan Engine, the file to be scanned must be completely received and stored on the local disk drive, the file must be closed, and the file name of the closed file must be given to the Norton AntiVirus Scan Engine.
 
 (Id.
 
 ¶ 7.) In short, the accused products scan for viruses only after the entire file has been transferred and after the file has been stored on the destination storage medium.
 
 Compare McAfee Associates,
 
 70 F.Supp.2d at 752.
 

 There apparently is no dispute between the parties regarding the manner in which the accused products operate. Referring to Defendant’s “Statement of Undisputed Facts,” Plaintiff states that “the parties
 
 *859
 
 agree that there is no dispute about how the products operate.” (Pl.’s Br. at 4.) Furthermore, Plaintiffs expert repeatedly states that he agrees with Defendant’s expert about how. Defendant’s products work.
 
 (See
 
 Magen DecLEx. 19 (Geske Report), at 7, 9, 12, 14, 15, 16.) Defendant’s summary of how its products operate as presented in the “Statement of Undisputed Facts” was gleaned from Defendant’s expert.
 
 (See, e.g.,
 
 Def.’s Br. at 8.)
 

 The accused products first allow the incoming digital data to be stored as a whole on the destination storage medium before it is scanned. Virus screening is performed only after the incoming digital data has been fully transferred and stored. Therefore, the accused products cannot perform the “receiving and screening ... prior to storage” limitation of claim 1 or the “searching for ... virus signatures ... while said computer is receiving a stream of digital data for storage on said storage medium” as required by claim 18. Because there is no dispute about how the accused products operate, there is no genuine issue as to any material fact concerning whether Defendant’s accused products literally infringe the ’776 Patent. Accordingly, because every limitation of claims 1 and 18 are not found in the accused products, this Court may grant summary judgment on the question of whether the accused products do not literally infringe the ’776 Patent.
 

 ii. Doctrine of equivalents
 

 According to the doctrine of equivalents, “a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is ‘equivalence’ between the elements of the accused product or process and the claimed elements of the patented invention.”
 
 Warner-Jenkinson Co. v. Hilton Davis Chemical, Co.,
 
 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997);
 
 McAfee Associates,
 
 70 F.Supp.2d at 757. The Supreme Court concluded that whatever approach is used for determining equivalence — e.g., the triple identity or the insubstantial differences approach — it must be “probative of the essential inquiry: Does the accused product or process contain elements identical or equivalent to
 
 each claimed element
 
 of the patented invention?”
 
 Wamer-Jen-kinson,
 
 520 U.S. at 40, 117 S.Ct. 1040 (emphasis added);
 
 see McAfee Associates,
 
 70 F.Supp.2d at 757.
 

 The determination of equivalence “must be applied to individual elements of the claim, not to the invention as a whole,”
 
 Warner-Jenkinson,
 
 520 U.S. at 29, 117 S.Ct. 1040, and “should be applied as an objective inquiry on an element-by-element basis,”
 
 id.
 
 at 40, 117 S.Ct. 1040.
 
 See McAfee Associates,
 
 70 F.Supp.2d at 757. The Court must focus on individual elements with “a special vigilance against allowing the concept of equivalence to eliminate completely any such elements.”
 
 Warner-Jenkinson,
 
 520 U.S. at 40, 117 S.Ct. 1040;
 
 see McAfee Associates,
 
 70 F.Supp.2d at 757. “[Application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.”
 
 Warner-Jenkinson,
 
 520 U.S. at 29, 117 S.Ct. 1040;
 
 see McAfee Associates,
 
 70 F.Supp.2d at 757. “An analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element.”
 
 Warner-Jenkinson,
 
 520 U.S. at 40, 117 S.Ct. 1040;
 
 see McAfee Associates,
 
 70 F.Supp.2d at 757.
 

 As in
 
 McAfee Associates,
 
 Defendant contends that prosecution history estoppel precludes Plaintiff from asserting a claim of infringement under the doctrine of equivalents.
 
 See McAfee Associates,
 
 70 F.Supp.2d at 757. Since the effect of prosecution history is the same as that considered in
 
 McAfee Associates,
 
 and because what Plaintiff may be estopped from argu
 
 *860
 
 ing on account of that prosecution history can be determined regardless of the particular defendant before the Court, the analysis of prosecution history estoppel provided by Judge Edmunds has collateral estoppel effect to the extent that the effect of the prosecution history was essential to a final judgment on the question of non-infringement.
 
 See Pfaff v. Wells Electronics, Inc.,
 
 5 F.3d 514, 518 (Fed.Cir.1993);
 
 Molinaro v. Fannon/Courier Corp., 745
 
 F.2d 651, 655 (Fed.Cir.1984);
 
 A.B. Dick Co. v. Burroughs Corp.,
 
 713 F.2d 700 (Fed. Cir.1983). Therefore, this Court adopts Judge Edmunds’ analysis of prosecution history estoppel as summarized below.
 

 Prosecution history estoppel is an established limitation on the doctrine of equivalents. As the Federal Circuit explained in
 
 Bai v. L & L Wings, Inc.,
 
 “[a]n applicant who responds to an examiner’s prior art rejection by narrowing his claim cannot later assert that the surrendered subject matter is an equivalent of the amended limitation.” 160 F.3d at 1356;
 
 see Warner-Jenkinson Co.,
 
 520 U.S. at 33, 117 S.Ct. 1040 (amending claims during prosecution creates a presumption of prosecution history estoppel);
 
 McAfee Associates,
 
 70 F.Supp.2d at 758. The purpose of prosecution history estoppel is to prevent a patentee from obtaining, through litigation, coverage of subject matter surrendered during prosecution in order to gain acceptance of a claim.
 
 See Haynes International, Inc. v. Jessop Steel Co.,
 
 8 F.3d 1573, 1577-78 (Fed.Cir.1993),
 
 modified on rehearing,
 
 15 F.3d 1076 (Fed.Cir.1994) (affirming summary judgment of non-infringement);
 
 McAfee Associates,
 
 70 F.Supp.2d at 757. Prosecution history estoppel is a question of law for the Court and, therefore, is suitable for summary judgment.
 
 See Bai,
 
 160 F.3d at 1356 (affirming summary judgment of non-infringement because of prosecution history estoppel);
 
 McAfee Associates, 70
 
 F.Supp.2d at 757.
 

 The legal standard for determining prosecution history estoppel is “an objective one, measured from the vantage point of what a competitor was reasonably entitled to conclude, from the prosecution history, that the applicant gave up to procure issuance of the patent.”
 
 Haynes International,
 
 8 F.3d at 1578;
 
 see McAfee Associates,
 
 70 F.Supp.2d at 757-58.
 

 If “a patent applicant has made a substantive change to his claim that clearly responds to an examiner’s rejection of that claim as unpatentable over prior art, prosecution history estoppel applies to that claim; only the question of the scope of the estoppel remains.”
 
 Sextant Avionique, S.A. v. Analog Devices, Inc.,
 
 172 F.3d 817, 826 (Fed.Cir.1999);
 
 Bai
 
 160 F.3d at 1355;
 
 see McAfee Associates, 70
 
 F.Supp.2d at 758. “The scope of the estoppel ... includes features that the applicant amended his claim to avoid or trivial variations of such prior art features. Moreover, prosecution history estoppel cannot be avoided by filing a continuing application with narrowed claims rather than responding directly to an outstanding rejection.”
 
 Desper Products,
 
 157 F.3d at 1338 (quotations omitted);
 
 see McAfee
 
 Associates, 70 F.Supp.2d at 758. The scope of the estoppel is ascertained by considering the subject matter surrendered during the prosecution history and “is determined with reference to the prior art and any amendments and/or arguments made in an attempt to distinguish such art.”
 
 Sextant Avionique,
 
 172 F.3d at 827 (citations omitted);
 
 see McAfee Associates, 70
 
 F.Supp.2d at 758.
 

 Here, as claims 1 and 18 were originally submitted with no limitation that virus screening was to be performed “prior to storage.”
 
 (See
 
 Magen Decl.Ex. 3.)
 
 See McAfee Associates,
 
 70 F.Supp.2d at 758. In response to the Patent and Trademark Office’s rejection of the original application, “the applicants amended the patent claims and argued that the claims were patentable because they required that virus screening be performed during the transfer of incoming digital data and be
 
 *861
 
 fore storage.”
 
 McAfee Associates,
 
 70 F.Supp.2d at 758.
 
 (See
 
 Magen Decl.Ex. 8.)
 

 The prosecution history shows that the applicants narrowed the scope of claims 1 and 18 to avoid the prior art by adding the limitation that virus screening was to be performed “prior to storage on the destination storage medium,” and thereby surrendering methods that screen for viruses after storage.
 
 McAfee Associates,
 
 70 F.Supp.2d at 758. As a result of these amendments, a competitor was reasonably entitled to conclude that the applicants gave up methods that screen for viruses after storage in order to procure issuance of the ’776 Patent. Therefore, as in
 
 McAfee Associates,
 
 Plaintiff “is es-topped from arguing here that the accused product[s], which screen[ ] for viruses after ‘storage,’ infringe! ] any claim of the ’776 Patent under the doctrine of equivalents.”
 
 See McAfee Associates,
 
 70 F.Supp.2d at 758. As discussed above, Defendant’s accused product scans for viruses after storage. Therefore, this Court may grant summary judgment that the accused products do not infringe the ’776 Patent under the doctrine of equivalents.
 

 Conclusion
 

 Accordingly, this Court being fully advised in the premises,
 

 IT IS HEREBY ORDERED that Defendant’s Motion for Summary Judgment of Non-Infringement [Docket Entry 149] is GRANTED.
 

 IT IS FURTHER ORDERED that this civil action is DISMISSED.
 

 IT IS FURTHER ORDERED that all other pending motions are DENIED without prejudice as moot.
 

 SO ORDERED.