**HILGRAEVE, INC., Plaintiff,**

v.

**SYMANTEC CORPORATION, Defendant.**

**No. CIV. 97–40370.**

United States District Court, E.D. Michigan, Southern Division.

July 9, 2003.

See also 265 F.3d 1336; 212 F.R.D. 345.

John E. Nemazi, Thomas A. Lewry, Ernie L. Brooks, Robert C.J. Tuttle, Brooks & Kushman, Southfield, MI, for plaintiff.

Dennis J. Levasseur, Detroit, MI, Martin C. Fliesler, Fliesler, Dubb, Burt Ma-

gen, Fleisler, Dubb, San Francisco, CA, for defendant.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before the Court are the following motions: (1) Defendant's motion for summary judgment of invalidity; (2) Plaintiff's motion for summary judgment that the asserted claims of the '776 patent are not invalid; and (3) Plaintiff's motion for summary judgment of infringement. The Court heard oral argument on the first two motions at a hearing held on April 23, 2003. The Court heard oral argument on the third motion at a hearing held on May 12, 2003. For reasons set forth below, the Court shall deny Defendant's motion for summary judgment of invalidity, grant Plaintiff's motion for summary judgment that the asserted claims of the '776 patent are not invalid, and deny Plaintiff's motion for summary judgment of infringement.

## I. BACKGROUND

Plaintiff Hilgraeve, Inc. ("Plaintiff") is a Michigan corporation with its principal place of business in Michigan. Plaintiff is the owner of U.S. Patent No. 5,319,776 (" '776 patent"), which issued on June 7, 1994 to inventors John K. Hile, Matthew H. Gray, and Donald L. Wakelin and was thereafter assigned to Plaintiff. Defendant Symantec Corporation ("Defendant") is a Delaware corporation with its principal place of business in California. The '776 patent is entitled "In Transit Detection of Computer Virus With Safeguard." Plaintiff filed the Complaint in this patent infringement action on September 15, 1997. Plaintiff filed an Amended Complaint on January 21, 2003, pursuant to an order of this Court. *See Hilgraeve Corp. v. Symantec Corp.*, 212 F.R.D. 345, 350 (E.D.Mich.2003) (Gadola, J.). In the Amended Complaint, Plaintiff alleges a single count of patent infringement pursuant to 35 U.S.C. § 271. Plaintiff alleges that the use of Defendant's products directly infringes the '776 patent and that Defendant induces others to infringe the '776 patent. On February 6, 2003, Defendant filed a counterclaim in response to the Amended Complaint, alleging that the '776 patent is invalid and that its products are non-infringing.

On March 28, 2000, this Court granted Defendant's motion for summary judgment of non-infringement. *See Hilgraeve Corp. v. Symantec Corp.* 90 F.Supp.2d 850, 859, 861 (E.D.Mich.2000) ("*Symantec I*"). On appeal, the Federal Circuit vacated this Court's order granting Defendant's motion for summary judgment of non-infringement and remanded this case for further proceedings. *See Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1346 (Fed.Cir. 2001) ("*Symantec II*").[1] On remand, Defendant moves for summary judgment of invalidity. Plaintiff moves for summary judgment that the asserted claims of the '776 patent are not invalid and for summary judgment of infringement.

## A. THE '776 PATENT

The Federal Circuit has explained that [t]he '776 patent relates to computer virus detection software. The software scans a digital data file for viruses as the file is transferred to a storage medium. If the software detects a virus prior to storing the file, it automatically blocks storage of the file. The software may be used, for example, to scan a file for viruses as the file is transferred from a floppy disk to a hard disk of a computer system, or as the file is transferred over the Internet from one computer system

---

1. The Federal Circuit generally affirmed this Court's holding that Defendant was not licensed to practice the '776 patent. *See Symantec II,* 265 F.3d at 1346.

to a storage medium of another computer system.

*Symantec II*, 265 F.3d at 1339.

The '776 patent contains twenty claims, yet only independent claims 1 and 18 were at issue in *Symantec I* and *II*. Claims 1 and 18 read as follows:

1. In a system for transferring digital data for storage in a computer storage medium, a method of screening the data as it is being transferred and automatically inhibiting the storage of screened data containing at least one predefined sequence, comprising the steps of:

causing a quantity of digital data resident on a source storage medium to be transferred to a computer system having a destination storage medium;

receiving and screening the transferred digital data prior to storage on the destination storage medium to determine if at least one of a plurality of predefined sequences are present in the digital data received;

and

in response to said screening step:

(a) automatically causing the screened digital data to be stored on said destination storage medium if none of the plurality of predefined sequences are present,

and

(b) automatically inhibiting the screened digital data from being stored on said destination storage medium if at least one predefined sequence is present.

18. A method of preventing the spread of computer viruses to a computer having a storage medium, comprising the steps of: simultaneously searching for a plurality of virus signatures, each of which comprising an identifiable digital sequence, while said computer is receiving a stream of digital data for storage on said storage medium;

providing an indication of the detection of a virus from said searching step; and

automatically inhibiting the storage of said digital stream on said storage medium if any of said virus signatures have been detected.

'776 patent, col. 17, 11. 9–29 and col. 18, 11. 45–57.

## B. PRIOR DECISIONS

### 1. *Symantec I*

In *Symantec I*, this Court focused its claim construction on the meaning of the word "storage" in claims 1 and 18 of the '776 patent. *See Symantec I*, 90 F.Supp.2d at 856–58. This Court held that "storage occurs when the incoming digital data is sufficiently present on the destination storage medium so that any viruses contained in the data can spread and infect the computer system." *Symantec I*, 90 F.Supp.2d at 857. After construing the term "storage," the Court compared the accused devises to claims 1 and 18 of the '776 patent. In so doing, the Court outlined the operation of Defendant's products as follows:

The transferred file is accessible to other programs *prior* to being examined by the accused products because the Norton AntiVirus Scan Engine is not invoked and does not access the transferred file *until after the operating system closes the file*. To invoke the Norton AntiVirus Scan Engine, the file to be scanned must be completely received and *stored* on the local disk drive, the file must be closed, and the file name of the closed file must be given to the Norton AntiVirus Scan Engine. *In short, the accused products scan for viruses only after the entire file has been transferred and after the file has been stored on the destination storage medium.*

*Id.* at 858 (internal citations omitted) (emphasis added).

The Court further concluded that "[t]here apparently is no dispute between the parties regarding the manner in which the accused products operate," *id.*, explaining that

> [t]he accused products first allow the incoming digital data to be stored as a whole on the destination storage medium before it is scanned. Virus screening is performed only after the incoming digital data has been fully transferred and stored. Therefore, the accused products cannot perform the "receiving and screening ... prior to storage" limitation of claim 1 or the "searching for ... virus signatures ... while said computer is receiving a stream of digital data for storage on said storage medium" as required by claim 18. Because there is no dispute about how the accused products operate, there is no genuine issue as to any material fact concerning whether Defendant's accused products literally infringe the '776 Patent. Accordingly, because every limitation of claims 1 and 18 are not found in the accused products, this Court may grant summary judgment on the question of whether the accused products do not literally infringe the '776 Patent.

*Id.* at 859.

### 2. *Symantec II*

On appeal, the Federal Circuit rejected this Court's construction of the term "storage." The Court of Appeals concluded that "storage" "occurs when the incoming digital data [are] sufficiently present on the destination storage medium and accessible by the operating system or other programs so that any viruses contained in the data can spread and infect the computer system." *Symantec II*, 265 F.3d at 1342 (internal quotation marks and citation omitted) (alteration in original). In adopting this claim construction, the court reasoned:

The '776 patent distinguishes prior art virus scanning programs because they "do not automatically prevent the virus from being stored on the medium in the first place, hence they cannot totally prevent the virus from attacking or spreading." '776 patent, col. 1, 11. 51–54. Thus, "storage" of the virus is identified with the virus's ability to spread and infect the computer system. A virus may not spread or infect the computer system, however, unless it is accessed by the operating system or other programs. *Symantec II*, 265 F.3d at 1342.

The Federal Circuit also rejected this Court's infringement analysis, concluding "that the conflicting affidavits of the parties' experts leave material fact questions unanswered." *Id.* In contrast to this Court's conclusion, the Federal Circuit found that Defendant's expert, Dr. Melvin, and Plaintiff's expert, Dr. John G. Geske, "did not in fact agree." *Id.* The court stated:

> The experts described the operation of the accused products in different ways. Symantec's expert, Dr. Melvin, described the operation of NAV as occurring in a sequence of steps. In this sequence, first (step one) a file is transferred for storage onto the destination storage medium. This transfer includes opening a new file on the storage medium and recording incoming data into the new file. Second (step two), the application causing the transfer makes a request to the operating system to close the file containing the transferred data. Third (step three), the operating system closes the file. Fourth (step four), after the file is closed, the Symantec product invokes the NAV Scan Engine to test the file for the presence of a virus. Symantec's expert alleged that after the third step and before the fourth step, the file is recorded on the storage medi-

um and accessible to the operating system and other programs and therefore "stored," and that since this occurs before the file is scanned for viruses, Symantec's products do not infringe. Hilgraeve's expert, Dr. Geske, stated that although he agreed with Dr. Melvin's "overview" of how the accused products operate, in his opinion there were critical points in Dr. Melvin's analysis that did not correspond with the behavior of the NAV as it executes. Critically, Dr. Geske interpreted the testimony of Mr. Cohen, the Chief Architect of the Symantec accused products, to mean that the accused products impose a barrier in the computer system's file system which prevents all programs and the operating system from accessing the transferred file until it is processed and screened for viruses. Thus, Dr. Geske disputed that the file becomes accessible to the operating system and other programs between steps three and four.

*Id.* at 1342–1343.

Further, the court in *Symantec II* found "inconclusive" four tests that Defendant's expert, Dr. Melvin, had conducted in an effort to demonstrate that a file becomes accessible by the operating system or other programs before it is scanned for viruses by the accused products. *Id.* at 1344. Essentially, the court found that Dr. Melvin's tests, all of which utilized the accused products under unusual operating conditions, were not relevant to the infringement analysis because they did not prove non-infringement of the accused products under normal operating conditions. *Id.* at 1343–1344.

Accordingly, the Federal Circuit concluded that, "[b]ecause the record shows the existence of genuine issues of material fact concerning the interaction of the accused devices with the operat[ing] system and other programs, the district court

erred in granting summary judgment of non-infringement." *Id.* at 1344.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *See SRI International v. Matsushita Electric Corp.,* 775 F.2d 1107, 1116 (Fed.Cir.1985). "For summary judgment, fact-finding is an inappropriate exercise .... If a dispute requiring a finding exists as to any material fact, summary judgment is improper." *Lemelson v. TRW, Inc.,* 760 F.2d 1254, 1260 (Fed.Cir. 1985).

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *See id.*

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transportation Service, Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## III. VALIDITY

■ A patent is presumed valid. 35 U.S.C. § 282. Therefore, the party challenging validity bears the burden of prov-

ing facts that establish invalidity by clear and convincing evidence. *Moba, B.V. v. Diamond Automation, Inc.,* 325 F.3d 1306, 1319 (Fed.Cir.2003); *Carella v. Starlight Archery,* 804 F.2d 135, 138 (Fed.Cir.1986).

## A. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF IN-VALIDITY

Defendant's motion for summary judgment of invalidity is premised upon its contention that the Federal Circuit's interpretation of the term "storage" in claims 1 and 18 of the '776 patent renders the '776 patent invalid for indefiniteness under 35 U.S.C. § 112 ¶ 2. As noted above, the Federal Circuit concluded that "storage" "occurs when the incoming digital data [are] sufficiently present on the destination storage medium and accessible by the operating system or other programs so that any viruses contained in the data can spread and infect the computer system." *Symantec II,* 265 F.3d at 1342 (internal quotation marks and citation omitted) (alteration in original). Defendant suggests that the Federal Circuit's interpretation of "storage" renders claims 1 and 18 indefinite because the limitations *sufficiently present on the destination storage medium* and *accessible by the operating system* "are contrary to the disclosed embodiments and are meaningless in light of the specification." (Def. Br. at 7; *see* Def. Br. at 11.) In response, Plaintiff argues that Defendant's motion amounts to nothing less than a direct challenge to the Federal Circuit's claim construction and that the Federal Circuit's mandate bars this Court from considering this issue. For the following reasons, the Court agrees with Plaintiff's assessment and shall deny Defendant's motion.

■ Section 112 ¶ 2 requires that, in a patent application, "[t]he specification shall conclude with one or more claims

particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 ¶ 2; *see Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313, 1342 (Fed.Cir.2003). "The primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, *e.g.,* competitors of the patent owner, can determine whether or not they infringe." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.,* 309 F.3d 774, 779–80 (Fed.Cir.2002); *accord Amgen,* 314 F.3d at 1342. Accordingly, "[a] claim is indefinite if, when read in light of the specification, it does not reasonably apprise those skilled in the art of the scope of the invention." *Amgen,* 314 F.3d at 1342; *accord Exxon Research and Engineering Co. v. United States,* 265 F.3d 1371, 1375 (Fed.Cir.2001); *In re Warmerdam,* 33 F.3d 1354, 1361 (Fed.Cir.1994). The challenger must prove indefiniteness by clear and convincing evidence. *Intel Corp. v. VIA Techs., Inc.,* 319 F.3d 1357, 1366 (Fed.Cir.2003).

" 'A determination of claim indefiniteness is a legal conclusion that is drawn from the Court's performance of its duty as the construer of patent claims.' " *Intel,* 319 F.3d at 1365 (quoting *Personalized Media Communications, LLC v. Int'l Trade Comm'n,* 161 F.3d 696, 705 (Fed. Cir.1998)); *accord Exxon,* 265 F.3d at 1376. In this regard, the Federal Circuit has noted:

> [W]e have not held that a claim is indefinite merely because it poses a difficult issue of claim construction. We engage in claim construction every day, and cases frequently present close questions of claim construction on which expert witnesses, trial courts, and even the judges of this court may disagree. Under a broad concept of indefiniteness, all

but the clearest claim construction issues could be regarded as giving rise to invalidating indefiniteness in the claims at issue. But we have not adopted that approach to the law of indefiniteness. We have not insisted that claims be plain on their face in order to avoid condemnation for indefiniteness; rather, what we have asked is that the claims be amenable to construction, however difficult that task may be. *If a claim is insolubly ambiguous, and no narrowing construction can properly be adopted, we have held the claim indefinite. If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.* By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity, and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal.

*Exxon,* 265 F.3d at 1375 (citations omitted) (emphasis added).

 ██ Here, the Federal Circuit has construed the term "storage." *See Symantec II,* 265 F.3d at 1342. By resolving the meaning of "storage" in claims 1 and 18, the Court of Appeals obviously did not find that term to be "insolubly ambiguous" and capable of "no narrowing construction." Accordingly, on remand this Court may not revisit this issue. *See Laitram Corp. v. NEC Corp.,* 115 F.3d 947, 951 (Fed.Cir. 1997) ("Upon return of its mandate, the district court cannot give relief beyond the scope of that mandate, but it may act on matters left open by the mandate.") (internal quotation marks and citations omitted).

Even a cursory review of Defendant's arguments reveals that Defendant is not asserting a claim of indefiniteness under § 112 ¶ 2. Rather, Defendant's quarrel lies with the Federal Circuit's construction of the term "storage." For example, Defendant contends:

> With the current interpretation, Claim 1 allows for the incoming data, and any viruses contained in the data, to become present on the destination storage medium before virus scanning ever takes place. In other words, the virus scanning occurs *after* the incoming data is present. However, every embodiment disclosed in the specification requires that virus scanning occur *before* any incoming data is present, either "sufficiently" or "insufficiently," on the destination storage medium.

(Def. Br. at 7). In this argument, Defendant states quite plainly that the Federal Circuit's construction of "storage" is *contrary* to the embodiment disclosed in the specification. This is an argument that Defendant should have raised, if it did not, in its motion for rehearing or in its petition for a writ of certiorari.[2] In any event, this Court will not, and indeed cannot, reconsider the Federal Circuit's construction of the term storage. The remaining arguments in Defendant's motion are similarly flawed. Accordingly, the Court shall deny Defendant's motion for summary judgment of invalidity.

## B. PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,319,776 ARE NOT INVALID

Plaintiff moves for summary judgment of validity, asserting that there is no genuine issue of material fact as to whether the '776 patent is invalid for obviousness under 35 U.S.C. § 103. In its present motion, Plaintiff requests summary judgment of validity as to the following items of alleged prior art:

- Symantec Antivirus for Macintosh version 1.3 ("SAM 1.3"), both alone and combined with the Macintosh Operating System Version 6.0.3 (MAC O/S 6.0.3);
- Virex version 2.12 ("Virex 2.12"); and
- Russell Davis and Lance Hoffman's article entitled "An Application of Parallelism and Pipelining to Computer Security" (the "Davis–Hoffman" article).[3]

Plaintiff raises two issues in its motion as to each of the alleged prior art references: (1) whether the identified references qualify as prior art under 35 U.S.C. § 102(a); and (2) if the references qualify as prior art, whether they render the '776 patent

**2.** The Federal Circuit denied rehearing and rehearing en banc on November 6, 2001, and the Supreme Court denied Defendant's petition for a writ of certiorari on March 4, 2002.

**3.** Plaintiff also requests "uncontested summary judgment" as to the following eight prior art references: (1) the "IBM Virus Scanning" program; (2) the "Weisman" article; (3) the "Rex" article; (4) the "McAfee & Haynes" article; (5) the "Cohen" article; (6) the "Spafford et al." article; (7) the "McAfee ScanRes" program; and (8) "Virex 2.3." Plaintiff contends that Defendant abandoned these eight references in response to Plain-

tiff's initial motion for summary judgment of validity, which Plaintiff filed on August 20, 1999. At the April 23, 2003 hearing on Plaintiff's motion, Defendant conceded that Plaintiff is entitled to summary judgment on these eight references of prior art. (*See* tr. at 53, April 23, 2003.) Plaintiff also argues that it "is entitled to uncontested summary judgment . . . that such claims are not invalid under 35 U.S.C. § 102 as anticipated by the prior art." (Pl. Br. at 2.) In response, Defendant has not disputed Plaintiff's contention that Defendant has abandoned the defense of anticipation under 35 U.S.C. § 102. Accordingly, Plaintiff is entitled to summary judgment on this issue.

obvious under 35 U.S.C. § 103. For the reasons set forth below, the Court shall grant Plaintiff's motion.

Section 102(a) of Title 35, United States Code provides, in pertinent part: "[a] person shall be entitled to a patent unless ... the invention *was known or used by others* in this country, or ... *described in a printed publication* in this or a foreign country, before the invention thereof by the applicant for patent." 35 U.S.C. § 102(a) (emphasis added). Accordingly, in order to qualify as prior art, the references relied upon by Defendant must have been "known or used" within the United States, or "described in a printed publication" in the United States or a foreign country prior to the '776 patent's date of invention. *See Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed.Cir.1997); 35 U.S.C. § 102(a). "The statutory language, 'known or used by others in this country' means knowledge or use which is accessible to the public." *Carella*, 804 F.2d at 139 (internal citation omitted). The parties agree for purposes of this motion that the '776 patent's date of invention was February, 1990.

### 1. SAM 1.3 and MAC O/S 6.0.3

Plaintiff argues that Defendant has failed to adduce clear and convincing evidence that either SAM 1.3 or MAC O/S 6.0.3 was distributed to the public prior to February, 1990. Plaintiff also argues that Defendant has no admissible evidence that SAM 1.3 and MAC O/S 6.0.3 were ever used or known by anyone in the manner relied upon by Defendant prior to February, 1990.

In response, Defendant offers several pieces of evidence in support of its contention that SAM 1.3 and MAC O/S 6.0.3 were sold, known, and used by Defendant and the public as early as 1989:

- The testimony of Paul D. Cozza, inventor of the antivirus program incorporated into SAM; (Harris Decl., Ex. 7);
- A copy of the SAM product including software on disk and the accompanying documentation; (Melvin Decl., Exs. 2–5);
- A copyright date of 1989 on the disk storing the software for SAM; (*Id.*, Ex. 2);
- A registration card included with the packaging for SAM dated June, 1989; (*Id.*, Ex. 5);
- An "Update Information" sheet associated with SAM dated December, 1989; (*Id.*, Ex. 5);
- The last page of the User's Manual dated March, 1989, and displaying a copyright date of 1989; (*Id.*, Ex. 3);
- The affidavit of Defendant's engineer Lee Gummerman, allegedly corroborating that SAM was prior art; (Gummerman Decl. ¶¶ 5–8);
- A "User's Manual" for SAM version 2.0, allegedly issued subsequent to SAM 1.3, dated February, 1990; (Melvin Decl., Ex. 6);
- Defendant's engineer Lee Gummerman's testimony that MAC O/S 6.0.3 has a copyright date of 1983–1988; (Gummerman Decl. ¶ 9.)

Plaintiff filed a voluminous set of evidentiary objections in response to Defendant's evidence. For the following reasons, the Court concludes that Defendant's evidence is insufficient as a matter of law to establish that either SAM 1.3 or MAC O/S 6.0.3 was known or used by others in this country prior to February, 1990.

First, the Court finds nothing in the declaration of Paul Cozza that establishes that SAM 1.3 was known or used by others in this country prior to February, 1990. Only one statement in Mr. Cozza's

declaration even suggests this fact. In paragraph 7 of his declaration, Mr. Cozza avers, "Based upon my personal knowledge, SAM 1.3 was shipped to and received by customers about December 1989." (Cozza Decl. ¶ 7.) Plaintiff objects to the statement in paragraph 7 on the ground that Mr. Cozza "does not supply any evidence of or basis for his conclusory statement that he has personal knowledge of the date of shipping of, or receipt by customers of, SAM 1.3 in December 1989." (Pl. Obj. ¶ 4 (footnoted omitted).)

Rule 602 of the Federal Rules of Evidence provides:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.

Fed.R.Evid. 602.

Although Rule 602 provides that "[e]vidence to prove personal knowledge may . . . consist of the witness' own testimony," the witness must still set forth a factual basis for his claim of personal knowledge of the matter in question. *See Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir.1988) (finding that the plaintiff's "conclusory assertion, unsubstantiated with any specific facts, fails to indicate any factual basis which would tend to show that he had personal knowledge of the matter"). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific con-crete facts establishing the existence of the truth of the matter asserted." *Id.* (internal quotation marks and citations omitted). Mr. Cozza has cited no evidence in support of his conclusory statement that SAM 1.3 was shipped to and received by customers in December of 1989. Accordingly, Plaintiff's objection is well taken, and the Court finds that the statement in paragraph 7 of Mr. Cozza's declaration is insufficient as a matter of law to establish that SAM 1.3 was known or used by others in this country prior to February, 1990. *Cf. Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1369 (Fed.Cir.1998) (holding that "uncorroborated oral testimony, particularly that of interested persons recalling long-past events, does not, of itself, provide the clear and convincing evidence required to invalidate a patent").

■ Second, Defendant offers a number of documents associated with SAM 1.3, each dated 1989. While some of the dates denote the date of copyright, others appear to indicate the date that the document was created or printed. Defendant also offers the user's manual to SAM 2.0, which is dated February, 1990. Plaintiff correctly notes that the dates imprinted on these documents are hearsay[4] when offered to prove the truth of the matter asserted, that is, that SAM 1.3 was accessible to the public as of the date set forth on the documents. *See, e.g., United States v. Cestnik*, 36 F.3d 904, 907 (10th Cir.1994) (concluding that the right sides of Western Union "to-send-money" forms, which contained information as to the amount of money transferred and the date of transfer, were hearsay when offered to prove that a particular amount of money was

---

4. Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 802 of the Federal Rules of Evidence provides that "[h]earsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."

transferred on a specific date); *United States v. Console*, 13 F.3d 641, 656 (3d Cir.1993) (concluding that a spiral notebook containing the dates of patients' visits to a doctor's office, when offered for the purpose of establishing when patients visited the doctor's office, was hearsay); *cf. Munoz v. Strahm Farms, Inc.*, 69 F.3d 501, 502–03 (Fed.Cir.1995) (concluding that photographic slide frames containing dates were admissible under the business records exception, Fed.R.Evid. 803(6), to the hearsay rule).

Even if these documents were admissible under an exception to the hearsay rule, they are insufficient as a matter of law to establish that SAM 1.3 was known or used by others in this country prior to February, 1990. If anything, the dates imprinted upon these documents establish simply the date of copyright, or the date that the document was created or printed. As noted above, Defendant bears the burden of establishing invalidity by clear and convincing evidence. A date imprinted on a document, without more, does not prove by clear and convincing evidence that SAM 1.3 was known or used by others in this country prior to February, 1990. It is noteworthy that Defendant has failed to produce contemporaneous shipping records or sales receipts to prove that SAM 1.3 actually was shipped or sold to customers prior to February, 1990. *Cf. Woodland Trust*, 148 F.3d at 1373 ("It is rare indeed that some physical record (*e.g.*, a written document such as notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist.")

Third, the Court finds nothing contained within the declaration of Lee Gummerman that would establish by clear and convincing evidence that SAM 1.3 was known or used by others in this country prior to February, 1990. The Court agrees with Plaintiff that Mr. Gummerman's statements are conclusory, lack foundation, and accordingly are inadmissible. (*See* Pl. Obj. ¶¶ 33, 34, 36.)

Mr. Gummerman avers:

My review of the SAM version 1.3 materials attached to [the declaration of Dr. Steven W. Melvin] indicate to me that these materials were part of the SAM version 1.3 product that was publicly distributed and sold by Symantec in 1989. Once sold, it is obvious that the products were used by the purchasers. Furthermore, Symantec employees used the software to test and to protect computers owned by Symantec.

(Gummerman Decl. ¶ 6.) Mr. Gummerman also states that the dates on the photocopy of the diskette, the registration card, and the user's manual "indicate to me, consistent with Symantec's business practices, that SAM version 1.3 was publicly available and sold in 1989." (Gummerman Decl. ¶ 7.)

Mr. Gummerman's conclusory reference to "materials" attached to the declaration of Dr. Steven Melvin does not establish a foundation for his conclusion that SAM 1.3 "was publicly distributed and sold by Symantec in 1989." If Mr. Gummerman is relying upon the dates imprinted upon those "materials," as he specifically avers in paragraph 7, the Court has already concluded that such dates, without more, do not amount to clear and convincing evidence that SAM 1.3 was known or used by others in this country prior to February, 1990. Finally, the Court finds absolutely no foundation for Mr. Gummerman's statement that "Symantec employees used [SAM 1.3] to test and to protect computers owned by Symantec," and this statement is thus inadmissible.

As to MAC O/S 6.0.3, Mr. Gummerman avers:

It is my understanding that this operating system was publicly available in 1989, and as early as 1988. I confirmed this date using the operating system itself. For example, by looking at the System file in the System Folder and selecting Get Info from the File Menu, a window will pop up that indicates a copyright date of "1983–1988."

(Gummerman Decl. ¶ 9.)

The Court has already concluded that a mere citation to the date imprinted on a document, without more, is insufficient to establish that a product was known or used by others on that date. Accordingly, the Court finds Mr. Gummerman's declaration insufficient as a matter of law to establish that MAC O/S 6.0.3 was known or used by others in this country prior to February, 1990.

For the reasons set forth above, the Court concludes that Defendant has failed to adduce evidence from which a reasonable jury could conclude by clear and convincing evidence that either SAM 1.3 or MAC O/S 6.0.3 was known or used by others in this country prior to February 1990. Accordingly, neither SAM 1.3 nor MAC O/S 6.0.3 is prior art under 35 U.S.C. § 102, and Plaintiff is entitled to summary judgment on this issue.

### 2. Virex 2.12

Plaintiff contends that Defendant cannot establish by clear and convincing evidence that Virex 2.12 qualifies as prior art because Defendant has failed to adduce evidence from anyone having personal knowledge of the matter. In response, Defendant contends that Virex 2.12 was available to the public in 1989, and sets forth the following evidence in support of that contention:

- The testimony of Robert S. Capon, President and founder of HJC, Inc., the company that published Virex, as to the authenticity of Virex and that

Virex was prior art; (*See* Harris Decl., Ex. 8 ¶ 10);

- The actual Virex product; (*See* Harris Decl., Exs. 7–9);
- A copyright date of 1988–89 on the Virex program disk; (*Id.*, Ex. 7.)
- Copyright dates of 1988 and 1989 on page 2 of the User's Guide; (*Id.*, Ex. 8); and
- A copyright date of 1988 on the box for the Virex product; (*Id.*, Ex. 9.)

Plaintiff filed a voluminous set of evidentiary objections to Defendant's evidence relating to Virex 2.12. Defendant's evidence with respect to Virex 2.12 is essentially the same type of evidence that Defendant offered in support of SAM 1.3. Thus, for the reasons set forth with respect to SAM 1.3, the Court finds Defendant's evidence as to Virex 2.12 insufficient as a matter of law to establish that Virex 2.12 is prior art. The Court briefly addresses Defendant's evidence.

Mr. Capon avers, "From my personal knowledge as President and Founder of HJC, I recall that the Virex version 2.12, as described in Exhibits 1–3 attached to this Declaration, was shipped to and received by customers at least as early as September 1989 and that Virex 1.0 began shipping to customers on or about mid-November of 1988." (Capon Decl., ¶ 10.) Plaintiff argues that Mr. Capon's statement is conclusory, irrelevant and not based upon personal knowledge. (Pl. Obj.¶ 23.) The Court agrees. Much like the statements by Mr. Cozza, the Court finds that Mr. Capon has cited no evidence in support of his conclusory statement that Virex 2.12 was shipped to and received by customers as early as September, 1989. Accordingly, Plaintiff's objection is well taken, and the statement in paragraph 10 of Mr. Capon's declaration is insufficient as a matter of law to establish that Virex

2.12 was known or used by others in this country prior to February, 1990.

The Court has concluded already that a date imprinted on a document, without more, is insufficient as a matter of law to establish that the product described in that document was known or used by others in this country as of that date. Thus, Defendant's citation to dates imprinted on Virex 2.12 product literature and on a photocopy of the diskette is similarly insufficient.

For the above reasons, the Court concludes that Defendant has failed to adduce evidence from which a reasonable jury could conclude by clear and convincing evidence that Virex 2.12 was known or used by others in this country prior to February 1990. Accordingly, Virex 2.12 is not prior art under 35 U.S.C. § 102, and Plaintiff is entitled to summary judgment on this issue.

### 3. The Davis–Hoffman Article

Defendant relies upon the Davis–Hoffman article as prior art only in combination with either SAM 1.3 or Virex 2.12. (*See* Def. Br. at 16–19.) Defendant does not claim that the Davis–Hoffman article *alone* renders the '776 patent invalid. (*See id.*) Thus, the Davis–Hoffman article is relevant to this case only if either SAM 1.3 or Virex 2.12 constitutes prior art. The Court already has concluded that neither product is prior art. Therefore, even if the Davis–Hoffman article were prior art, a point which Plaintiff disputes, the Davis–Hoffman article would not render the '776 patent invalid. Accordingly, there is no genuine issue of material fact concerning whether the Davis–Hoffman article renders the '776 patent invalid for obviousness under 35 U.S.C. § 103, and the Court shall grant Plaintiff's motion on this issue.

### 4. Conclusion

For the reasons set forth above, the Court shall grant Plaintiff's motion for summary judgment that the asserted claims of the '776 patent are not invalid.[5] Accordingly, Defendant shall be precluded from raising at trial the defense of obviousness pursuant to 35 U.S.C. § 103 with respect to any of the eleven prior art references identified above. Moreover, Defendant shall be precluded from raising at trial the defense of anticipation pursuant to 35 U.S.C. § 102.

### IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT

Plaintiff moves for summary judgment of infringement, alleging that the operation of the accused products directly infringes the method claims of the '776 patent and that the sale of Defendant's products induces customers to infringe the method claims of the '776 patent. Plaintiff's motion is based upon the following premises: (1) that the *only* issue on remand is whether the accused products screen for viruses prior to "storage" as that term was construed by the Federal Circuit; and (2) that the Federal Circuit excluded the report of Defendant's expert, Dr. Stephen W. Melvin. For reasons set forth below, both of these premises are flawed, and the Court shall deny Plaintiff's motion.

"A patent infringement analysis requires two steps. First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Symantec II,* 265 F.3d at 1341 (internal quotation marks and citations omitted). Moreover, "[t]o

---

5. Because Defendant has failed to establish that either SAM 1.3 or Virex 2.12 is prior art under 35 U.S.C. § 102(a), the Court need not reach the further issue concerning whether either of these references renders the '776 patent invalid for obviousness under 35 U.S.C. § 103.

prove literal infringement, the patentee must show that the accused device contains *every* limitation in the asserted claims. If even one limitation is missing or not met as claimed, there is no literal infringement." *Riles v. Shell Exploration and Prod. Co.*, 298 F.3d 1302, 1308 (Fed. Cir.2002) (quotation marks and citations omitted) (emphasis added).[6]

## A. Issues Remain Concerning Claim Construction

■ Plaintiff contends that the Federal Circuit's construction of the term "storage" resolved all remaining claim construction issues (*see* Pl. Br. at 3), and that "further proceedings in this case on the infringement issue are limited to the question whether the transferred data is screened for virus before or after 'storage,'" (Pl. Br. at 1). Although Plaintiff's position would greatly simplify this Court's task on remand, nothing in the Federal Circuit's mandate so narrowed the issues. It is important to note that this Court in *Symantec I* and the Federal Circuit in *Symantec II* were addressing *Defendant's*

motion for summary judgment of *non-infringement*. Defendant was merely required in its motion to establish that a *single* element of the asserted claims was not present in the accused products, hence, the focus on the meaning of the term "storage" in claims 1 and 18.[7]

■ By contrast, in order to prove infringement, Plaintiff has the burden of establishing that the accused products contain *every* limitation of the asserted claims. The Court of Appeals did not comment upon the issues of claim construction that would remain should *Plaintiff* move for summary judgment of infringement on remand. In this respect, Defendant has outlined numerous issues of claim construction that allegedly remain to be resolved. (*See* Def. Br. at 11–16). By limiting its discussion to the term "storage," Plaintiff has failed to carry its initial burden on summary judgment of infringement, that is, Plaintiff has failed to address sufficiently whether the accused products contain *every* limitation of the asserted claims.[8]

**6.** Although the question of literal infringement remains at issue in this case, the question of infringement under the doctrine of equivalents has been resolved in Defendant's favor. In *Symantec I*, this Court concluded that prosecution history estoppel precludes Plaintiff from raising a claim of infringement under the doctrine of equivalents. *See* 90 F.Supp.2d at 861. The Federal Circuit did not disturb this Court's holding on the doctrine of equivalents in *Symantec II*.

**7.** In *Symantec I*, this Court explicitly noted that the inquiry on Defendant's motion for summary judgment of non-infringement was narrow in focus:

In the instant case, Plaintiff accuses Defendant of infringing claims 1, 2, 6, 12, 14, 16, and 18 of the '776 Patent. Claims 1 and 18 are independent claims, whereas claims 2, 6, 12, 14, and 16 are dependent upon claim 1. A finding that Defendant's accused products do not infringe the independent claims will dispose of Plaintiff's case. *See Desper*

*Products, Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1338 n. 5 (Fed.Cir.1998); *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed.Cir.1991); [*Hilgraeve Corp. v.] McAfee Associates*, 70 F.Supp.2d [738] at 744 [(E.D.Mich.1999)]. Therefore, the Court need concern itself only with claims 1 and 18.

*Symantec I*, 90 F.Supp.2d at 855.

**8.** Plaintiff's conclusory citation to the "element-by-element" analysis of the alleged infringement set forth in its expert's reports, (*see* Pl. Br. at 4.), does not fulfill its initial burden on summary judgment. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").

Accordingly, the Court shall deny Plaintiff's motion on this basis.

## B. Issues of Fact Remaining Concerning Claim Comparison

Even if the Court were to reach the claim comparison step, genuine issues of material fact remain. The Federal Circuit concluded "that the conflicting affidavits of the parties' experts [Dr. John G. Geske for Plaintiff and Dr. Stephen W. Melvin for Defendant] leave material fact questions unanswered." *Symantec II*, 265 F.3d at 1342. This Court had based its summary judgment decision upon a finding that there was in fact no dispute between these two experts as to the operation of the accused products. *See Symantec I*, 90 F.Supp.2d at 858–59. The Court of Appeals concluded otherwise, finding that "[t]he experts . . . did not in fact agree." *Symantec II*, 265 F.3d at 1342.

Plaintiff focuses its attention on the Federal Circuit's criticism of four tests conducted by Dr. Melvin "to prove that a file becomes accessible to the operating system or other programs before it is scanned for viruses by the NAV Scan Engine." *Symantec II*, 265 F.3d at 1343. Because Dr. Melvin's four tests did not test the accused products under normal operating conditions, the court found his tests inconclusive on the question of infringement. *See id.* at 1343–44. Specifically, the court found Dr. Melvin's first and second tests "not probative of infringement during normal operation of the accused products." *Id.* at 1343. The court found Dr. Melvin's third test similarly deficient, noting, "as with the first two tests, whether or not the accused products infringe when operated in conjunction with another anti-virus product—perhaps an unusually redundant mode of operation—does not answer the question whether they infringe while operating alone." *Id.* at 1344. Finally, the court found that, while "[the fourth] test may prove that the func-

tionality of the accused products can be defeated to avoid infringement[, this test] does not prove non-infringement of the products under normal operating conditions." *Id.* Despite this criticism of Dr. Melvin's four tests, the Federal Circuit did not hold that Melvin's opinion as a whole was inadmissible on remand. Moreover, Plaintiff has not challenged the admissibility of Dr. Melvin's expert opinion since the remand.

Therefore, on Plaintiff's motion for summary judgment of infringement, this Court is faced with essentially the same evidence that the Federal Circuit found inconclusive in *Symantec II*. (*See, e.g.*, Pl. Ex. 3, Rep. of Dr. John G. Geske, June 30, 1999; Behun Decl., Ex. 1, Rep. of Dr. Stephen W. Melvin, June 30, 1999.) As Defendant correctly notes, the battle of the experts continues, and for this reason, summary judgment of infringement is inappropriate.

## C. Conclusion

Because of the fatal flaws in Plaintiff's motion for summary judgment, the Court finds no reason to address the remaining issues raised in Plaintiff's brief. The Court is satisfied that issues of material fact remain and that the issue of infringement must be resolved by a jury. Accordingly, the Court shall deny Plaintiff's motion for summary judgment.

## V. CONCLUSION

For reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment of invalidity [docket entry 253] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment that the asserted claims of the '776 patent are not invalid [docket entry 248] is **GRANTED**. In accordance with the granting of Plaintiff's motion, Defendant

may not raise at trial the defense of obviousness under 35 U.S.C. § 103 with respect to: **(1)** SAM 1.3 either alone or in combination with MAC O/S 6.0.3; **(2)** Virex 2.12; **(3)** the Davis–Hoffman article; **(4)** the "IBM Virus Scanning" program; **(5)** the "Weisman" article; **(6)** the "Rex" article; **(7)** the "McAfee & Haynes" article; **(8)** the "Cohen" article; **(9)** the "Spafford et al." article; **(10)** the "McAfee ScanRes" program; and **(11)** "Virex 2.3." Moreover, Defendant may not raise at trial the defense of anticipation under 35 U.S.C. § 102.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment of infringement [docket entry 247] is **DENIED**.

**SO ORDERED.**